**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

SEP 2 6 2024

TAMMY H. DOWNS, CLERK

By: _____
DEP CLERK

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**NEWRAYS ONE, LLC**                                                       **PLAINTIFF**

v.                    Case No. *4:24cv824-LPR*

**FAULKNER COUNTY, ARKANSAS;**
**ALLEN DODSON, in his official capacity as**
**Faulkner County Judge; TIM RYALS,**
**in his official capacity as Faulkner County Sheriff;**
**CAROL CREWS, in her official capacity as**
**Faulkner County Prosecuting Attorney;**
**PHIL MURPHY, in his official capacity as**
**Faulkner County Attorney**                                          **DEFENDANTS**

## COMPLAINT

Plaintiff NewRays One, LLC ("NewRays") brings this complaint against defendants Faulkner County, Arkansas; Allen Dodson, in his official capacity as Faulkner County Judge; Tim Ryals, in his official capacity as Faulkner County Sheriff; Carol Crews, in her official capacity as Faulkner County Prosecuting Attorney; and Phil Murphy, in his official capacity as Faulkner County Attorney (jointly, "Defendants").

### I. INTRODUCTION

1.      This action arises from Defendants' efforts to pass and enforce Faulkner County Ordinance 23-20, which was enacted in violation of federal and Arkansas law, constitutes a taking for private use and without just compensation, and intentionally discriminates against NewRays' lawful business activities in violation of its right to equal protection. This action also arises from efforts by Defendants to retaliate against NewRays for exercise of its constitutional rights.

This case assigned to District Judge *Rudofsky*
and to Magistrate Judge *Kearney*

## II. JURISDICTION, VENUE, AND PARTIES

2.      This Court has original jurisdiction over this action under 28 U.S.C. § 1331 because the claims arise under the Constitution, laws, or treaties of the United States.

3.      This Court has original jurisdiction over this action under 28 U.S.C. § 1332(a) because the action arises between citizens of different states, and the amount-in-controversy exceeds $75,000, exclusive of interest and costs.

4.      This Court has supplemental jurisdiction over state law claims that are so related to federal questions that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a).

5.      Venue is proper in this Court because the United States District Court for the Eastern District of Arkansas, Central Division, is the federal judicial district in which each defendant resides and where the real property at issue is situated. 28 U.S.C. §§ 1391 and 83(a)(1).

6.      NewRays is a limited liability company whose citizenship is determined by the citizenship of its constituent members. *GMAC Commercial Credit LLC v. Dillard Dept. Stores, Inc.*, 357 F.3d 827, 829 (8th Cir. 2004).

7.      NewRays' sole constituent member is Compute West, LLC, whose sole constituent member is Yunpeng "Steven" Li, who is a citizen of California.

8.      Therefore, NewRays is a citizen of California for purposes of diversity jurisdiction.

9.      Faulkner County, Arkansas is a municipal corporation under Arkansas law. *See White County v. Cities of Judsonia, Kensett and Pangburn*, 369 Ark. 151, 251 S.W.3d 275 (2007).

10.     Therefore, Faulkner County, Arkansas is a citizen of Arkansas for purposes of this Court's exercise of diversity jurisdiction. *Moor v. County of Alameda*, 411 U.S. 693, 718 (1973).

11.    Allen Dodson is a natural person and citizen of Arkansas and is sued in his official capacity as Faulkner County Judge. Judge Dodson is the chief executive officer of Faulkner County, Arkansas and is the official charged with enforcing the ordinances enacted by the Faulkner County Quorum Court.

12.    Tim Ryals is a natural person and citizen of Arkansas and is sued in his official capacity as Faulkner County Sheriff. Sheriff Ryals, through his agents, employees, and instrumentalities, is the official charged with investigating and issuing citations for violation of criminal offenses in Faulkner County, Arkansas.

13.    Carol Crews is a natural person and citizen of Arkansas and is sued in her official capacity as the Faulkner County Prosecuting Attorney. Ms. Crews, through her agents, employees, and instrumentalities, is the official charged with prosecuting criminal offenses in Faulkner County, Arkansas.

14.    Phil Murphy is a natural person and citizen of Arkansas and is sued in his official capacity as the Faulkner County Attorney. Mr. Murphy, through his agents, employees, and instrumentalities, is the official charged with representing Faulkner County, Arkansas in all civil actions to which it is a party.

15.    Because NewRays is a citizen of California, and all Defendants are citizens of Arkansas, there is complete diversity of citizenship between NewRays and all Defendants.

16.    NewRays brings federal constitutional claims against all Defendants under Fed. R. Civ. P. 57; 28 U.S.C. §§ 2201 and 2202; 42 U.S.C. § 1983, and state law claims under the Arkansas Declaratory Judgment Act and the Arkansas Constitution. Ark. Code Ann. § 16-111-102.

17.     NewRays' state law claims derive from the same nucleus of operative fact as to form the same case or controversy as the federal claims, thereby warranting the independent exercise of supplemental jurisdiction under 28 U.S.C. § 1367.

### III. BACKGROUND

18.     On or about October 4, 2022, NewRays acquired title to real property in Faulkner County, Arkansas for the purpose of engaging in the business of operating a data center, including hosting machines to mine digital assets such as cryptocurrency.

19.     Ever since acquiring title to its real property, NewRays has taken concrete steps and expended considerable funds to plan, build, and operate a data center facility on the parcel.

20.     On April 13, 2023, the Arkansas General Assembly enacted Act 851 of 2023, known as the Arkansas Data Centers Act of 2023 ("Act 851"). Ark. Code Ann. §§ 14-1-601, *et seq.*

21.     The text of Act 851 provided that its purpose was to "clarify the guidelines needed to protect data asset miners from discriminatory industry specific regulations and taxes." Ark. Code Ann. § 14-1-602(b)(2) (repealed in part 2024).

22.     In May 2023, NewRays began lawful business operations as a data center at its parcel in Faulkner County, Arkansas.

23.     NewRays' parcel is in an unincorporated area of Faulkner County, Arkansas.

24.     At the time NewRays commenced its lawful business operations, no zoning restriction regulated NewRays' business operations.

25.     At the time NewRays commenced its lawful business operations, no zoning restriction regulated the sound generated by NewRays' business operations.

26.     As early as June 6, 2023, the Faulkner County Quorum Court had begun discussing "the crypto mine ordinance," which was directly intended to interfere with NewRays' exercise of its lawful business operations at its parcel.

27.     On June 6, 2023, the Faulkner County Quorum Court's Courts and Public Safety Committee attempted to hold a public meeting to discuss a "crypto mine ordinance," but only two Justices of the Peace attended that meeting, thus a quorum was not reached.

28.     Given the absence of a quorum, defendant Murphy suggested that the committee "adjourn your meeting" to visit with community members opposed to NewRays' operations, so that discussion took place off any public record or transcription.

29.     On June 13, 2023, the Faulkner County Quorum Court's Courts and Public Safety Committee held a public meeting during which Faulkner County Justices of the Peace and defendant Murphy expressly discussed Faulkner County's intent to create a facially neutral ordinance to target NewRays because of the community's perception of "foreign involvement" in its operations.

30.     Defendant Murphy explained, "there's a lot of sentiment that I've heard from members of the public worried about some of the foreign involvement. And we can't make an ordinance that prohibits the foreign involvement. What we can do […] is land use planning. We can create a land use planning ordinance. We can create an ordinance that deals with things that we can measure like sound, so those are issues that have been upheld for years. And so we have to approach it from something that is constitutional, something that has the backing of our judicial system."

31.     In response to a question from the audience at the committee hearing, Justice Coats, who would become the lead sponsor for Faulkner County Ordinance 23-20 ("Ordinance 23-20"), stated, "the ordinance we're discussing right now is the data center, and so it has nothing to do with the noise part of it, it is the data center only."

32.     On July 11, 2023, the Faulkner County Quorum Court's Courts and Public Safety Committee met again to deliberate about the text of a proposed ordinance, which would eventually become Ordinance 23-20.

33.     Ordinance 23-20 facially discriminates against data centers and cryptocurrency mining operations.

34.     Ordinance 23-20 was intended to apply only to NewRays, and no other person or entity, despite the presence of numerous other commercial and industrial applications generating more sound than does NewRays.

35.     During the committee meeting of July 11, 2023, defendant Murphy stated the discriminatory components of Ordinance 23-20 were a feature, not a bug: "Yes, it does discriminate. We are intentionally discriminating in this case."

36.     Defendant Murphy explained that Ordinance 23-20 was specifically intended to apply to NewRays' lawful business operations.

37.     Defendant Murphy again acknowledged that the Faulkner County Quorum Court lacked the authority to make express classifications based on national origin but stated that it could use its power to criminalize conduct to empower a judge to shut down NewRays' operations.

38.     Defendant Murphy identified specific individual plaintiffs in the now-pending civil action *Anderson et al. v. NewRays One, LLC*, E.D. Ark. Case No. 4:23-CV-00685-LPR-ERE ("the *Anderson* case"), including Gladys Anderson and Mickey McMillen, as being granted authorization to trigger "complaint-driven" criminal enforcement under Ordinance 23-20.

39.     Consideration of Ordinance 23-20 took place amid widespread anti-Chinese sentiment in Faulkner County, Arkansas.

40.     That anti-Chinese sentiment targeted NewRays because of the perceived race, national origin, and ethnic identity of NewRays' agents, employees, and related persons.

41.     In the prelude to the Faulkner County Quorum Court's consideration of Ordinance 23-20, a group called "Secure Arkansas" directed multiple anti-Chinese newsletters to individual members of the Faulkner County Quorum Court, including on June 18, 2023 ("Mysterious Chinese Guests Around the Conway/Greenbrier Area"); June 28, 2023 ("How the Communist Chinese are Hijacking America, Locally"); July 1, 2023 ("Power Companies Subsidizing Communist China Players!"); July 9, 2023 ("CCP Crypto Mining Around Marshall, Ark?"); July 14, 2023 ("Ban Crypto Mining, JPs & County Commissioners... Before It's Too Late!"); and July 17, 2023 ("Unexpected Deadly Weapons Being Loosed Upon Americans!").[1]

_____

[1] Those materials were part of a pattern of anti-Chinese newsletters which contained allegations that entities such as Walmart, the University of Arkansas, and Columbia University were complicit in an "invasive communist Chinese threat at home;" that "Columbia University is strongly connected to **China** and has been since 1871! Straight to communist Beijing. See Columbia Global Centers here. Close to 20% of Columbia's student body are Chinese." Those communications claimed, "[i]t seems the globalist company, WalMart, [sic] has a heavy hand in our university. Why are university professors and graduate students signing up for the communist Chinese, Thousand Talent's program? Who is being paid by the Chinese government?" And that "Cryptic Farms was probably put into place with the help of the University of Arkansas. Secure Arkansas believes that we have way too much Chinese communist influence going on in this country, in OUR state, and now locally, also." (emphasis in original)

42.     In the prelude to the development of Ordinance 23-20, Faulkner County Justice of the Peace Maree Coats, the primary sponsor of Ordinance 23-20, received specific accounts of racially inflammatory comments from opponents of NewRays' project, based on the perceived race and national origin of persons affiliated with NewRays, including "Were [where's] the klan when you need them," "go back to [C]hina," and "the real problem is that there [sic] Chinese and people (including me) don't understand what they are doing and won't don't [sic] listen."

43.     On July 18, 2023, the Faulkner County Quorum Court met to consider Ordinance 23-20.

44.     At that meeting, Justice of the Peace Coats, the lead sponsor of Ordinance 23-20, stated, "I want to vote to put their back against the wall," in direct reference to NewRays.

45.     Indeed, much of the discussion regarding Ordinance 23-20 was how to structure the ordinance to specifically target NewRays—and only NewRays—with defendant Murphy warning, "[o]nce we broaden it to all data centers, that's the potential Acxiom problem."

46.     Once again, defendant Murphy explained that the Faulkner County Quorum Court lacked the power to interfere with NewRays' property rights: "We're not equipped with the tools to force anybody to stop unfortunately. This goes back to the issue of what does the Quorum Court have as its tools that its been given by the state legislature."

47.     Defendant Murphy stated, "the only tool we have is creating a criminal penalty and I've told some of y'all before it's sort of like building a house with a hammer[.] This is a piece of the answer, it's probably not the total answer."

48.     Speaking directly to the forthcoming *Anderson* plaintiffs in the audience, defendant Murphy stated, "I would still encourage all of the individuals that if they're seeking something that's permanent, this is probably—that may be better solved in circuit court as a civil matter."

8

49.     The legislative intent of passing Ordinance 23-20 was to achieve a deprivation of NewRays' distinct investment-backed expectations, despite the Faulkner County Quorum Court's lack of authority to do so.

50.     The purpose of any criminal provisions of Ordinance 23-20 was pretextual, intended to achieve by "the only tool we have" goals that the Faulkner County Quorum Court lacked any constitutional or statutory authority to pursue.

51.     The purpose of Ordinance 23-20 was to confer a private benefit to certain individual persons to the specific detriment of NewRays' existing uses of its real property.

52.     On July 19, 2023, the Faulkner County Quorum Court enacted Ordinance 23-20, which contained an "emergency clause" intended so that its provisions would take immediate effect before the effective date of Act 851. A copy of Ordinance 23-20 is attached as Exhibit 1.

53.     Ordinance 23-20 imposed substantive requirements on the operations of data centers, which it defined as "[i]ndustrial or commercial building or facility that houses IT infrastructure for building, running, and delivering applications and services, and for storing and managing the data associated with those applications and services includes [sic] but is not limited to commercial crypto mining facilities." Ex. 1, Art. 2, ¶ 2.

54.     NewRays' data center is a "data center" within the meaning of Ordinance 23-20, and the definition of "data center" in Ordinance 23-20 was specifically intended to encompass NewRays, and no other person or entity.

55.     Ordinance 23-20 imposed maximum decibel limitations of 60 dBa between 8 a.m. to 8 p.m. and 55 dBa between 8 p.m. and 8 a.m. Ex. 1, Art. 4.

56.     Ordinance 23-20 purported to impose criminal sanctions for violation of its terms. *Id.*, Art. 6, ¶ (1). ("Any person(s), firm, corporation, partnership, association, owner, occupant,

9

agent or anyone having ownership in the subject property or supervision or control over the Data Center that violates or fails to comply with any provision of this Ordinance, shall be guilty of a misdemeanor.").

57.     Faulkner County, Arkansas's power to impose criminal sanction is narrowly circumscribed under Arkansas law. *E.g.*, Ark. Const., Amend. 55, § 1(b) ("No county may declare any act a felony or exercise any authority not relating to county affairs."); Ark. Code Ann. § 14-20-101(a) ("A county is authorized to prohibit and punish any act, matter, or thing which the laws of this state make a misdemeanor and to prescribe penalties for all offenses in violation of any ordinance of the county not greater nor less than the penalties prescribed for similar offenses against the laws of this state.").

58.     Faulkner County, Arkansas lacks authority to impose any criminal liability in the absence of a state statute that criminalizes such conduct. Ark. Code Ann. § 14-20-101(a).

59.     The Faulkner County Quorum Court is a creature of Arkansas state statute, and its powers are subject and subordinate to statutory enactments of the Arkansas General Assembly. Ark. Code Ann. § 14-14-801.

60.     Arkansas law prohibits any quorum court from undertaking "any legislative act contrary to the general laws of this state." Ark. Code Ann. § 14-14-805(13).

61.     Under Arkansas law, violation of a local ordinance which lacks any prospect of imprisonment is not a misdemeanor, but rather a "violation." Ark. Code Ann. § 5-1-108(a) ("An offense is a violation if the offense is designated a violation by (1) The Arkansas Criminal Code; or (2) A statute not a part of the Arkansas Criminal Code.").

62.     "Regardless of any designation appearing in the statute defining an offense, an offense is a violation for purposes of the Arkansas Criminal Code if the statute defining the offense

10

provides that no sentence other than a fine, fine or forfeiture, or civil penalty is authorized upon conviction." Ark. Code Ann. § 5-1-108(b).

63.     Ordinance 23-20 provides that no sentence other than a fine, fine or forfeiture, or civil penalty is authorized upon conviction.

64.     Therefore, Ordinance 23-20 is a "violation for purposes of the Arkansas Criminal Code." Ark. Code Ann. § 5-1-108(b).

65.     There is no state statute that "make[s]" the conduct regulated by Ordinance 23-20 a "misdemeanor."

66.     Nor are there any "similar offenses against the laws of this state," for which Ordinance 23-20 could prescribe penalties.

67.     There is no state statute that criminalizes any of the conduct purportedly regulated under Ordinance 23-20.

68.     To the contrary, as enacted into statute by the Arkansas General Assembly, "data centers, digital currency, and blockchain technology are legal in all fifty (50) states." Ark. Code Ann. § 14-1-602.

69.     Accordingly, Faulkner County, Arkansas lacks the power to criminalize the conduct regulated by Ordinance 23-20 as a matter of Arkansas general law.

70.     Ordinance 23-20 purports to impose criminal liability against "[a]ny person(s), firm, corporation, partnership, association, owner, occupant, agent or anyone having ownership in the subject property or supervision or control over the Data Center," which violates Ark. Code Ann. § 4-38-304(a). ("A member or manager [of a limited liability company] is not personally liable, directly or indirectly, by way of contribution or otherwise, for a debt, obligation, or other liability of the company solely by reason of being or acting as a member or manager.").

71.     Ordinance 23-20 purports to authorize separate citizen causes of action against digital asset mining operations such as NewRays', which exceeds the scope of local authority conferred to local governments under Arkansas general law.

72.     Ordinance 23-20 does not apply to other business operations in Faulkner County, Arkansas, such as numerous agricultural, industrial, and other commercial ventures that generate substantial sound, including an industrial venture located near NewRays, which continues to generate greater sound levels than does NewRays.

73.     Ordinance 23-20 was passed after NewRays had already commenced business operations at its real property in Faulkner County, Arkansas.

74.     Ordinance 23-20 was directly targeted against NewRays' existing, lawful business operations for the purpose of stopping NewRays' pre-existing and continuous operations in Faulkner County, Arkansas.

75.     On July 21, 2023, two days after the enactment of Ordinance 23-20, twenty-four plaintiffs filed the *Anderson* case as a civil action in the Circuit Court of Faulkner County, Arkansas, which became *Gladys Anderson et al. v. NewRays One, LLC*, Faulkner County Circuit Court Case No. 23CV-23-1096.

76.     On July 24, 2023, NewRays filed notice of removal of that civil action to the U.S. District Court for the Eastern District of Arkansas, which became *Anderson v. NewRays One, LLC*, E.D. Ark. Case No. 4:23-CV-00685-LPR-ERE.

77.     Later anti-Chinese newsletters from Secure Arkansas showed efforts to interfere with federal jurisdiction over the *Anderson* case, stating "won't Ethan Wang have to halt or at least alter his notice of removal from state court to federal court that was filed July 24, 2023?"

78.     On August 1, 2023, Act 851 became effective.

79.     During the pendency of Act 851's effectiveness, Ordinance 23-20 was expressly preempted as a matter of Arkansas law.

80.     Despite that express preemption, Defendants continued their efforts to target NewRays under the pretext of a criminal investigation under Ordinance 23-20.

81.     On August 3, 2023, Faulkner County Chief Deputy Sheriff Chad Wooley stated to other public officials that "the data center [Ordinance 23-20] is going to apply to currently is a crypto-mining center," making direct reference to the property belonging to NewRays.

82.     Chief Deputy Wooley stated, "this one is more complex than our animal ordinance," and asked, "[d]o you know if the City of Conway has something similar in place for city ordinance violations?"

83.     On August 7, 2023, defendant Crews stated, "[l]et me reach out to the AG's office for some guidance."

84.     On August 7, 2023, deputy prosecuting attorney Chad Brown, stated, "The ordinance places liability on, among others, the owner of the property upon which the data center is located. It appears that the data center in the Bono area is owned by NewRays, LLC, a North Carolina company with a California mailing address and a registered agent in Mountain Home. Attached is the assessor's and the secretary of state's information on the company."

85.     Thus, since August 7, 2023, Defendants have had actual knowledge of the registered agent for service of process for NewRays.

86.     On August 16, 2023, the Faulkner County Sheriff's Office spent $896.64 to purchase testing equipment seeking to enforce Ordinance 23-20, despite its express preemption by Act 851.

13

87.     On September 8, 2023, Chief Deputy Wooley purportedly "calibrated" a Reed Instrument Sound Manual "per manual instructions."

88.     On September 10, 2023, despite the express preemption of Ordinance 23-20 by Act 851, Chief Deputy Wooley conducted "normal monitoring per ordinance" in the form entry for "Complaint Date."

89.     In an attached memorandum, Chief Deputy Wooley stated he "conducted a night time [] monitoring at 431 Hwy 285N at the property line of the datamine."

90.     However, there is no "normal monitoring per ordinance" under the plain text of Ordinance 23-20, which purports to be exclusively "complaint-driven," as reflected by the entry "Complaint Date" on the Monitoring Report.

91.     On September 12, 2023, despite the express preemption of Ordinance 23-20 by Act 851, Chief Deputy Wooley prepared a second "Ordinance 23-20 Monitoring Report." Again, no complaint was referenced. Instead, it stated, "Normal Monitoring."

92.     On May 3, 2024, Governor Sarah Huckabee Sanders signed SB 78 and 79 into law, which effectuated modest revisions to Act 851's protections against discriminatory taxes and regulations imposed by local governments against data centers, such as NewRays'.

93.     Despite the presence of an emergency clause, SB 78 and 79 of 2024 contained a 90-day period for existing data centers to comply with the statutory changes.

94.     Earlier, on April 18, 2024, NewRays had filed a motion in the *Anderson* case to request a hearing to consider the impact of a post-briefing declaration by lead plaintiff Gladys Anderson ("Anderson Declaration") in contradiction of her pleaded allegations regarding the sound decibel levels at issue.

95.    NewRays noted that it "reserves the right to challenge enforcement of [Ordinance 23-20] under existing law and whether any such putative violation could amount to admissible evidence in this or any other action under existing law. No such challenge is yet ripe: as Faulkner County officials have testified, NewRays is in compliance." *Anderson*, Dkt. No. 50, n. 1.

96.    The next day, April 19, 2024, Gladys Anderson and the other *Anderson* plaintiffs ("*Anderson* plaintiffs"), through counsel, filed an objection and motion to exclude the Anderson Declaration from consideration in that action.

97.    The *Anderson* plaintiffs claimed, "Faulkner County Ordinance 20-23 is absent from the Plaintiffs' complaints, the Defendant's Answer, and all of Defendant's prior motions, briefs, replies, and corrected replies. That Ordinance is not necessarily embraced by the Second Amended Complaint. The Ordinance thus has nothing to do with the pending Rule 12(b)(6) motion to dismiss." *Id.*, Dkt. No. 51, § 12.

98.    Yet the *Anderson* plaintiffs also argued, "[i]f anything, that Ordinance appears to confirm [NewRays'] noise as pleaded violates the ranges set in that Ordinance." Dkt. No. 52 at 5.

99.    On May 8, 2024, the Court set an omnibus hearing on dispositive motions in the *Anderson* case for May 28, 2024.

100.    On May 13, 2024, Gladys Anderson, and possibly others, met with public officials with the Faulkner County Sheriff's Office to seek enforcement efforts under Ordinance 23-20 and presented alleged sound decibel measurements allegedly recorded by Ms. Anderson.

101.    Those specific measurements, and a hand-written letter apparently submitted by Gladys Anderson, were and remain squarely at issue in the *Anderson* case.

102.    Upon information and belief, the timing of that meeting and the request for enforcement efforts under Ordinance 23-20 were specifically undertaken in an attempt to evade

federal jurisdiction, as pending dispositive motions threatened dismissal of the plaintiffs' operative complaint in the *Anderson* case.

103.    On May 19, 2024, Chief Deputy Wooley attempted to take sound decibel level measurements related to Ordinance 23-20.

104.    Despite the continued effectiveness of Act 851 with respect to NewRays's existing uses, and despite Faulkner County, Arkansas's lack of authority to criminalize NewRays's lawful business activities, Defendants attempted to undertake criminal enforcement of Ordinance 23-20 based on measurements allegedly taken on May 19, 2024.

105.    On May 28, 2024, the Court held a hearing in the *Anderson* case at which it granted in part and denied in part NewRays' motion to dismiss the *Anderson* plaintiffs' operative complaint, including dismissal of plaintiff Treva Branscum's claims for failure to state a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6).

106.    Also at that hearing, and over the *Anderson* plaintiffs' objections, the Court took judicial notice over Ordinance 23-20, which NewRays had reserved the right to challenge in its underlying briefing.

107.    Months before, the Court had held a previous hearing at which the *Anderson* plaintiffs' strict liability claims were dismissed as a matter of law and the *Anderson* plaintiffs were directed to replead to accord with the plausibility standards required under *Twombly* and *Iqbal*.

108.    After multiple amendments of pleadings and multiple dispositive motions hearings, by May 28, 2024, substantial proceedings on the merits had been undertaken in the *Anderson* case, which had long since proceeded "well beyond the embryonic stage." *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 238 (1984).

109.    On June 7, 2024, individual citizen Jimmie Cavin, who is not a licensed attorney, acting in concert with the *Anderson* plaintiffs, wrote to defendant Dodson, stating, "I represent Gladys Anderson who as I'm sure you know lives next door to the NewRays facility in Bono. We would like to schedule a time with you next week to meet and discuss the ongoing nuisance NewRays is emitting from their facility which violates Ordinance 23-20. I have copied Gladys on this email."

110.    That same day, defendant Dodson replied to Mr. Cavin stating, "Yes, I'll be more than happy to meet. I can't meet next week, but am happy to meet the following week, on Tuesday or Wednesday (18th or 19th, any time on those days)."

111.    On June 18, 2024, defendants Dodson and Murphy met with Mr. Cavin and Ms. Anderson, and possibly others to coordinate activities under color of law to trigger enforcement of Ordinance 23-20.

112.    As of June 18, 2024, Defendants, acting directly in concert with the *Anderson* plaintiffs, had coordinated an agreement to "use the County's authority" to evade federal jurisdiction over the *Anderson* action for the specific private benefit of the *Anderson* plaintiffs.

113.    Three days later, on June 21, 2024, an affidavit for criminal summons was filed in Faulkner County District Court Case No. CWS-24-1597.

114.    On June 26, 2024, a criminal summons was issued in Faulkner County District Court Case No. CWS-24-1597.

115.    For unknown reasons, both apparently remain under seal by the Faulkner County District Court.

116.    Because there has been no criminal arrest nor any service of any criminal summons, no criminal action has commenced under Ark. R. Crim. P. 28.2(a), which provides that "the time

17

for trial shall commence running from the date of arrest or service of summons." *See Burns v. State*, 2024 Ark. App. 329, *8 ("The time for trial begins to run on the date of the defendant's arrest or service of summons."); *Harris v. State*, 2020 Ark. App. 555, *3 (2020) (speedy trial period triggered only upon service of criminal summons); *see also* Ark. R. Crim. P. 28.2(a) Reporter's Note 2007 ("The reference to 'service of summons' applies to those cases in which the defendant is brought before the court via a summons, rather than an arrest. See Rule 6—Issuance of Summons in Lieu of Arrest Warrant.").

117.    On June 28, 2024, individual citizen Jimmie Cavin, continuing to act in concert with both the *Anderson* plaintiffs and Defendants, wrote to Faulkner County Deputy Prosecuting Attorney Jacob Webb.

118.    Mr. Cavin again stated he "represent[ed] Gladys Anderson," solicited "a copy of the Affidavit and served Summons," and requested a meeting with the Faulkner County Prosecuting Attorney's Office and Gladys Anderson "to get an update on where we are at."

119.    On July 2, 2024, Faulkner County Chief Deputy Sheriff Chad Wooley instructed service attempts to be made for criminal summons not on NewRays' registered agent or officers but on its outside litigation counsel representing NewRays in the *Anderson* case, expressly referring to the *Anderson* case to determine how service of process should be made. ("Through FOI documentation to our office recently and civil case 23CV-23-1096, it appears William Johnson Ogles with Wright Lindsey Jennings law firm is who [our civil process deputy] will attempt contact with first.").[2]

---

[2] Faulkner County Circuit Court Case No. 23CV-23-1096 was the state court action removed by NewRays which became the *Anderson* case, E.D. Ark. Case No. 4:23-CV-00685-LPR-ERE.

120.    On July 3, 2024, Mr. Cavin wrote to Mr. Webb, stating, "I have not gotten a response or the requested records."

121.    On July 3, 2024, Mr. Webb replied, "I had to request the signed summons from the court to provide for you," and appeared to transmit to Mr. Cavin copies of "the affidavit and the summons" as "public information," despite the apparent maintenance of the criminal proceedings under seal by the Faulkner County District Court.

122.    On July 10, 2024, Mr. Webb spoke by telephone with Mr. Cavin and Ms. Anderson, whose personal email address was included in related written correspondence.

123.    Defendants' attempts to commence a state court proceeding have all been undertaken in direct concert with the lead plaintiff in the *Anderson* case for the specific purpose and effect of evading federal jurisdiction in the *Anderson* case, including a service attempt made on litigation counsel for NewRays, who had no authorization or designation for service of process.

124.    The specific purpose of the efforts to enforce criminal penalties under Ordinance 23-20 is to confer a private benefit to the *Anderson* plaintiffs by interfering with the ongoing federal proceedings in the *Anderson* case, causing direct, significant, and compounding prejudice to NewRays, despite the Faulkner County Quorum Court's complete lack of authority to criminalize conduct in the manner attempted by Ordinance 23-20.

125.    On August 23, 2024, NewRays filed notice of removal of the state court proceeding to the U.S. District Court for the Eastern District of Arkansas as *State of Arkansas v. NewRays One, LLC*, E.D. Ark. Case No. 4:24-CV-720.

126.    At 3:07 p.m. on August 23, 2024, NewRays filed its notice of filing of notice of removal in the state court action.

127.    However, the District Court of Faulkner County, Arkansas did not docket that filing until 2:49 p.m. on August 26, 2024.

128.    Despite NewRays' having filed notice of removal, which suspended state court jurisdiction over the state court proceeding, the Faulkner County District Court, specifically Judge Carnahan, proceeded further, holding a hearing on August 26, 2024, which was styled as a "plea and arraignment."

129.    The State of Arkansas was represented at that plea and arraignment hearing by an agent of defendant Crews.

130.    Agents of defendant Crews had received notice of the filing of notice of removal at approximately 5:08 p.m. on August 23, 2024, and had specific knowledge that the action had been removed to federal court.

131.    NewRays' removal of the state court action to federal court divested the state court of subject-matter jurisdiction as a matter of law. 28 U.S.C. § 1446(d).

132.    Out of an abundance of caution, and to attempt to safeguard against potential prejudice, NewRays appeared at the state court hearing through counsel.

133.    There, NewRays asserted that the Faulkner County District Court lacked subject-matter jurisdiction based on NewRays' removal of the action and lacked personal jurisdiction due to insufficiency of process and insufficiency of service of process in the state court proceeding, including the absence of any charging instrument as required under Arkansas law.

134.    To ensure that the Faulkner County District Court had notice of federal jurisdiction over the action, NewRays delivered to the Court an additional copy of all papers which it had previously filed on August 23, 2024, including the notice of removal and all supporting exhibits.

135.    Despite actual receipt of NewRays' notice of filing of notice of removal, Judge Carnahan ruled the state court retained subject-matter jurisdiction and proceeded further.

136.    Judge Carnahan did not address NewRays' assertions regarding insufficiency of process and insufficiency of service of process.

137.    Instead, Judge Carnahan requested that counsel for NewRays tender a plea on behalf of NewRays to the charge of violation of Ordinance 23-20.

138.    Counsel for NewRays advised that counsel lacked authorization from NewRays to enter a plea in a criminal proceeding.

139.    In response, and despite NewRays' actual special appearance through counsel to challenge jurisdiction, process, and service of process, Judge Carnahan ruled that NewRays had failed to appear and ordered the issuance of a bench warrant for its arrest.

140.    In doing so, Judge Carnahan acted in the total absence of jurisdiction.

141.    Following the state court hearing, Treva Branscum, formerly a plaintiff in the *Anderson* case before her claims were dismissed at a contested motion hearing, sent to Justice of the Peace Maree Coats accounts from a multi-person group text message thread which, upon information and belief, relayed the fact that Judge Carnahan had refused to acknowledge federal jurisdiction and instead issued a bench warrant for the arrest of NewRays.

142.    At 3:07 p.m. on August 26, 2024, only after the plea and arraignment hearing had already concluded, the Faulkner County District Court docketed NewRays' notice of filing of notice of removal, which had been filed days in advance of the hearing.

143.    Based on the post-removal actions taken by Judge Carnahan in the total absence of jurisdiction, on August 28, 2024, NewRays petitioned for a writ of prohibition, stay of state court

proceedings, and writ of certiorari in the removed federal action. *State of Arkansas v. NewRays One, LLC*, E.D. Ark. Case No. 4:24-CV-720-LPR, Dkt. No. 7.

144.    At 2:51 p.m. on August 28, 2024, in the total absence of jurisdiction over the action, Judge Carnahan caused the issuance of a criminal summons naming Chunhua Zhao, an individual natural person, as a "defendant."

145.    At 2:54 p.m. on August 28, 2024, in the total absence of jurisdiction over the action, Judge Carnahan caused the issuance of a criminal summons naming Changhong Changhong Wu, an individual natural person, as a "defendant."

146.    At 2:56 p.m. on August 28, 2024, in the total absence of jurisdiction over the action, Judge Carnahan caused the reissuance of a criminal summons against NewRays.

147.    Ark. R. Crim. P. 6.1(a) authorizes judicial officers to issue "criminal summons []
in any case in which a complaint, information, or indictment is filed or returned against a person not already in custody."

148.    Ark. R. Crim. P. 6.1(b) provides that "[a] prosecuting attorney who files an information or approves the filing against a complaint against a person not already in custody may authorize the clerk of a court to issue a criminal summons in lieu of an arrest warrant."

149.    Ark. R. Crim. P. 6.2(a)(vi) requires that a summons shall "have attached a copy of the information, complaint, or indictment."

150.    At 3:00 p.m. on August 28, 2024, Faulkner County Deputy Prosecuting Attorney Jacob Webb sent written correspondence to Reginald Prevoe, who upon information and belief is an agent, employee, or designee of the Faulkner County District Court.

151.    In that correspondence, Mr. Webb asked, "[c]an we get a copy of the bench warrant in this case? This is still showing as sealed for some reason. I can see where it's filed but isn't uploaded."

152.    Based on Mr. Webb's statement, upon information and belief, Judge Carnahan had caused to be filed a sealed bench warrant in the state court proceeds in the absence of any request from defendant Crews, or any of her agents, employees, or instrumentalities.

153.    Defendants have failed to produce any copy of that bench warrant filed under seal despite multiple, specific requests made by NewRays, through counsel, both under the Arkansas Freedom of Information Act ("FOIA"), and through criminal discovery as governed by the Arkansas Rules of Criminal Procedure.

154.    At 3:13 p.m. on August 28, 2024, Mr. Prevoe responded to Mr. Webb's correspondence. Mr. Prevoe stated, "[s]ummons were done instead of bench warrants."

155.    At 3:20 p.m. on August 28, 2024, counsel for NewRays asked, "did the Judge recall the bench warrant? I was informed that a bench warrant was issued. Can you please confirm if that has been issued, or recalled?"

156.    At 3:38 p.m. on August 28, 2024, Mr. Prevoe responded, "Apologies for the confusion, Criminal summons were issued, not bench warrants."

157.    Upon information and belief, no complaint, information, or indictment had been filed against any individual defendant at the time Judge Carnahan caused issuance of criminal summonses against the individual natural persons.

158.    Upon information and belief, Judge Carnahan undertook issuance of that additional process *sua sponte*, which was outside his judicial authority as a matter of law.

23

159.     Defendants, acting under color of law, effectuated issuance of additional criminal summonses to threaten criminal liability against individual natural persons affiliated with NewRays after NewRays had effectuated removal of the state court proceeding to federal court.

160.     Upon information and belief, Defendants undertook those post-removal actions in whole or in part because NewRays had engaged in the constitutionally protected activity of petitioning for redress of its grievances by removing the state court proceeding to federal court.

161.     On September 13, 2024, NewRays requested "a copy of each unclassified information and affidavit for criminal summons submitted [] to initiate the two criminal summonses which were issued against the individual defendants during the period of removal."

162.     On September 13, 2024, NewRays made a FOIA request for "all public records evidencing each communication, including all related documents and attachments, between each employee, agent, or representative of the Faulkner County Prosecuting Attorney's Office and each employee, agent, or representative of the Faulkner County District Court referring, relating to, and/or concerning each criminal prosecution initiated by the Faulkner County Prosecuting Attorney's Office under an ordinance enacted by the Faulkner County Quorum Court, including but not limited to Faulkner County Ordinance 23-20, from the period of January 1, 2020, to the date of compliance."

163.     On September 18, 2024, defendant Crews produced a response to that FOIA request, but that response lacks any communication, document, or attachment demonstrating the submission of a complaint, information, or indictment sufficient to trigger issuance of criminal summons against any natural person as part of the state court proceeding.

164.     Upon information and belief, none of the criminal summonses issued by Judge Carnahan on August 28, 2024 complied with Ark. R. Crim. P. 6.1(a), 6.1(b), or 6.2(a)(vi).

24

165.    Upon information and belief, Judge Carnahan acted outside the judicial capacity and in the complete absence of jurisdiction when the Faulkner County District Court issued criminal summonses naming individual natural persons as criminal defendants in the state court proceeding.

166.    Enforcement of Ordinance 23-20 would cause immediate and irreparable injury to NewRays' business expectancies and goodwill. *Rogers Group v. City of Fayetteville*, 629 F.3d 784, 789 (8th Cir. 2010).

167.    Enforcement of Ordinance 23-20 would hinder future growth of NewRays and disrupt its existing business relationships with its customers.

168.    The ability for NewRays to grow and accommodate its customers' demands is critical to its commercial viability.

169.    Imposition of restrictions such as Ordinance 23-20 will drive away customers, investors, and other potential business partners of NewRays.

170.    Even if NewRays prevails in the instant action, any customers lost during the pendency of this action would be unlikely to return once Ordinance 23-20's restrictions are lifted.

171.    As shown by Defendants' conduct, and as evidenced by the text of Ordinance 23-20, the risk of unconstitutionally imposed criminal sanctions under Ordinance 23-20 threatens NewRays' customers, agents, owners, and occupants of NewRays' property, which has a chilling effect on NewRays' growth and ability to accommodate its customers' demands.

## COUNT ONE
## TAKING WITHOUT JUST COMPENSATION (42 U.S.C. § 1983)

172.    Ordinance 23-20 is a taking of NewRays' private property without just compensation.

173.    "The Takings Clause of the Fifth Amendment provides that private property shall not 'be taken for public use, without just compensation.'" *Murr v. Wisconsin*, 582 U.S. 383, 392, 137 S.Ct. 1933, 1942 (2017) (citing U.S. Const. amend. V.).

174.    "A property owner may bring a takings claim under [42 U.S.C.] § 1983 upon the taking of his property without just compensation by a local government." *Knick v. Township of Scott, Pennsylvania*, 139 S.Ct. 2162, 2179 (2019).

175.    NewRays' use of its real property was lawful when it was established.

176.    Ordinance 23-20's attempt to criminalize NewRays' pre-existing lawful use is a taking of property without compensation in violation of due process of law. *Blundell v. City of West Memphis*, 258 Ark. 123, 522 S.W.2d 661 (1975).

177.    The Faulkner County Quorum Court lacks any power to deprive NewRays of the existing use of its real property in the absence of just compensation.

178.    As a pretext to avoid providing just compensation for its taking, Ordinance 23-20 attempts to criminalize conduct that Arkansas state law does not criminalize either as a "misdemeanor" or a "violation."

179.    Faulkner County, Arkansas acted in the total absence of authority to criminalize that conduct as a matter of Arkansas law.

180.    Ordinance 23-20 intentionally, discriminatorily, and specifically interferes with NewRays' distinct investment-backed expectations.

26

181.     Ordinance 23-20 expressly violates governing Arkansas law that prohibits the Faulkner County Quorum Court from exercising legislative authority in this *ultra vires* manner.

182.     Ordinance 23-20 so frustrates NewRays' distinct investment-backed expectations that it amounts to a taking of NewRays' private property rights.

183.     If Ordinance 23-20 is not enjoined, then NewRays will be deprived of its distinct investment-backed expectations.

184.     Faulkner County, Arkansas has given no compensation to NewRays for its intentional and discriminatory taking of NewRays' distinct investment-backed expectations being generated and to be generated at its parcel in Faulkner County, Arkansas.

185.     NewRays is entitled to the award of just compensation from Faulkner County, Arkansas due to its deprivation of NewRays' distinct investment-backed expectations.

186.     To date, NewRays has already expended substantial capital investments to construct and operate its data center facility in Faulkner County, Arkansas, including substantial capital investments to construct sound remediation devices, including both a sound wall and enclosures of the machines operated at the data center.

187.     The current valuation of NewRays' data center facility is approximately $5 million. This investment will be rendered as waste through enforcement of Ordinance 23-20.

188.     Enforcement of Ordinance 23-20 directly threatens to shut down NewRays' business operations, whether through an injunction, an order of abatement, or through the attempted application of collateral estoppel in the *Anderson* case.

189.     Since commencing operations in May 2023, NewRays expended not less than $5 million in capital investments and has generated far greater than $75,000 in net revenues; thus, the

amount in controversy in this action exceeds the minimum jurisdictional limits of this Court for purposes of federal diversity jurisdiction.

190.    Even a temporary shutdown of NewRays would rapidly cause business injury: in addition to any accumulation of continuous fines under Ordinance 23-20, NewRays' lost revenue interrupted by any shutdown would exceed $75,000 in less than one week's time.

191.    If Ordinance 23-20 is allowed to be enforced, then NewRays is entitled to recover from Faulkner County, Arkansas just compensation in the amount of its past capital expenditures and the anticipated net revenue from its distinct investment-backed expectations for the reasonable duration of its anticipated business expectancies.

192.    NewRays anticipates generating net revenue of not less than $45,000,000 during the next five-year period of its operations, in addition to all capital expenditures that risk being rendered as waste, the financial penalties occasioned by possible enforcement, as well as all costs and fees incurred in bringing this action as provided under federal law.

193.    The specific legislative purpose of Ordinance 23-20 was to "intentionally discriminate" against NewRays' use of its property, to "put their back against the wall," and to force NewRays to "stop" with "the only tools" Defendants believed the Faulkner County Quorum Court possessed.

194.    The specific legislative purpose of Ordinance 23-20 was for the "the court" to "use this ordinance to cease operations, or he could potentially use contempt, they're not following an order that he gave, the court could order contempt and shut down a cryptomining facility at that point."

195.    However, NewRays lacks any right to bring any claim for preliminary injunctive relief or for the award of just compensation in state court proceedings commenced under Ordinance 23-20.

196.    "The police power may be and frequently it is exerted to effect a purpose or consummate an enterprise in the public interest that requires the taking of private property; but, whatever the purpose or the means employed to accomplish it, the owner is entitled to compensation for what is taken from him." *Delaware, L. & W.R. Co. v. Town of Morristown*, 276 U.S. 182, 193 (1928) (affirming decree declaring city ordinance "repugnant to the Fourteenth Amendment" and restraining municipality from interfering with company's use of its premises).

197.    The existence and maintenance of Ordinance 23-20 constitutes a present invasion of NewRays' property rights and a threat to continue the invasion; thus, this Court has equitable jurisdiction. *See Cuyahoga River Power Co. v. City of Akron*, 240 U.S. 462, 463 (1916) (reversing dismissal of bill in equity seeking to prevent appropriation of municipality of waters belonging to Ohio corporation).

198.    Ordinance 23-20 is a forbidden private taking by Defendants for the impermissible purpose of conferring a private benefit on particular private parties, *i.e.*, the *Anderson* plaintiffs. *Kelo v. City of New London, Conn.*, 545 U.S. 469, 477 (2005) (citing *Midkiff*, 467 U.S. at 238; *Missouri Pac. Ry. Co. v. Nebraska*, 164 U.S. 403 (1896); *Calder v. Bull*, 3 U.S. 386 (1798)).

199.    "The taking by a state of the private property of one person or corporation, without the owner's consent, for the private use of another, is not due process of law, and is a violation of the fourteenth article of amendment to the constitution of the United States." *Missouri Pac.*, 164 U.S. at 417.

200.    Faulkner County, Arkansas "may not take property under the mere pretext of a public purpose, when its actual purpose was to bestow a private benefit." *Kelo*, 545 U.S. at 478.

201.    In the absence of just compensation, NewRays is entitled to a preliminary and permanent injunction that strikes down Ordinance 23-20 and restrains Defendants from acts to enforce Ordinance 23-20 or any other facially discriminatory legislation in aid of this Court's jurisdiction over this action and the *Anderson* case.

**COUNT TWO**
**VIOLATION OF THE CONTRACTS CLAUSE (42 U.S.C. § 1983)**

202.    The Contract Clause of the United States Constitution provides that no state shall "pass any Law impairing the obligation of Contracts." U.S. Const. art. I, § 10, cl. 1.

203.    NewRays has one or more contractual agreements that pre-existed Ordinance 23-20 and which are substantially impaired by threatened enforcement of Ordinance 23-20.

204.    Efforts to "stop" NewRays from engaging in its pre-existing lawful business activities, through threatened enforcement actions under Ordinance 23-20, or through Defendants' coordination with the *Anderson* plaintiffs, substantially impair one or more of NewRays' contractual agreements.

205.    Because Defendants lack any authorization to criminalize conduct otherwise lawful under Arkansas law, there is no significant and legitimate public purpose behind Ordinance 23-20.

206.    Thus, Ordinance 23-20 is unconstitutional under the Contract Clause.

207.    Any adjustment of the contractual rights and responsibilities of NewRays is unreasonable and inappropriate under any public purpose that could justify Ordinance 23-20.

208.    NewRays is entitled to a preliminary and permanent injunction that strikes down Ordinance 23-20 and restrains Defendants from acts to enforce Ordinance 23-20 or any other

facially discriminatory legislation in aid of this Court's jurisdiction over this action and the *Anderson* case.

### COUNT THREE
### VIOLATION OF PROCEDURAL DUE PROCESS (42 U.S.C. § 1983)

209.    "No person shall be [...] deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.

210.    No State shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

211.    NewRays has a constitutional right to procedural due process in the *Anderson* case, which includes the right to a federal jury trial on contested issues of fact, and a federal court's determination of questions of law.

212.    The *Anderson* plaintiffs have acted in concert with Defendants to deny NewRays' right to procedural due process in the *Anderson* case.

213.    Absent relief in this action, NewRays risks irreparable injury of its right to contest disputed questions of law and fact in the *Anderson* case.

214.    Upon information and belief, the *Anderson* plaintiffs seek to use the unlawful process under Ordinance 23-20 to establish collateral estoppel over disputed questions of law and fact in the absence of the procedural due process protections held by NewRays in the *Anderson* case, including the rights to plead offensive and defensive claims and civil discovery as authorized under the Federal Rules of Civil Procedure.

215.    The violation of NewRays' procedural due process rights arises from the state court proceeding's collateral effects *within* the *Anderson* case, which constitutes a state court intrusion on the federal court's superintending jurisdiction over the *Anderson* case.

216.    Because NewRays' due process injury is sustained within a federal action over which this Court exercises jurisdiction, there should be no exhaustion requirement imposed on NewRays to bring its procedural due process claims under 42 U.S.C. § 1983.

217.    There is no adequate state remedy to prevent NewRays' federal procedural due process injury within the *Anderson* case.

218.    Absent preliminary injunctive relief issued by this Court, NewRays' procedural due process injury will be permanent and irremediable.

219.    To prevent irreparable injury caused by the imminent deprivation of its procedural due process rights, NewRays is entitled to a preliminary and permanent injunction that strikes down Ordinance 23-20 and restrains Defendants from acts to enforce Ordinance 23-20 or any other facially discriminatory legislation in aid of this Court's jurisdiction over this action and the *Anderson* case.

## COUNT FOUR
## RETALIATION FOR EXERCISE OF FIRST AMENDMENT RIGHTS (42 U.S.C. § 1983)

220.    NewRays has a fundamental right to petition the government for redress of grievances. U.S. Const., amend I.

221.    NewRays exercised its right to petition the government for redress of grievances by removing the state court proceeding to federal court and by appearing at the state court hearing to challenge jurisdiction, process, and service of process.

222.    At all times, Defendants have acted under color of law and are persons subject to suit under 42 U.S.C. § 1983.

223.    Defendants may not retaliate against NewRays for the exercise of its First Amendment rights. *Hartman v. Moore*, 547 U.S. 250, 256 (2006).

224. NewRays' right to exercise its constitutional rights free from retaliation was clearly established at all times relevant to this action. *Rinne v. Camden County*, 65 F.4th 378, 383 (8th Cir. 2023).

225. NewRays' removal of the state court proceeding to federal court and its challenge to the state court's jurisdiction were constitutionally protected conduct.

226. Defendants' post-removal expansion of the state court criminal proceeding against individuals believed to be affiliated with NewRays was motivated in whole or in part by NewRays' exercise of its constitutional rights.

227. The absence of any submission by a prosecuting authority to establish probable cause for criminal liability is the absence of probable cause.

228. A person of ordinary firmness would be chilled from further exercise of the right to seek redress of grievance by the retaliatory issuance of criminal process against himself or his affiliates.

229. NewRays is entitled to a preliminary and permanent injunction that strikes down Ordinance 23-20, quashes all post-removal state court process, and restrains Defendants from acts to enforce Ordinance 23-20 or any other facially discriminatory legislation in aid of this Court's jurisdiction over this action and the *Anderson* case.

## COUNT FIVE
## VIOLATION OF EQUAL PROTECTION (42 U.S.C. § 1983)

230. The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

231.     Before passage of Ordinance 23-20, NewRays had "complied with every requisite deemed by the law, or by the public officers charged with its administration[.]" *Yick Wo v. Hopkins*, 118 U.S. 356, 374 (1886).

232.     The Faulkner County Quorum Court passed Ordinance 23-20 under color of law in violation of specific constraints on the power of local governments under Arkansas law.

233.     The specific purpose of Ordinance 23-20 was to deprive NewRays of the right to use and enjoy its pre-existing lawful use of its property.

234.     Ordinance 23-20 specifically targets and applies only to "data centers" and specifically identifies "commercial crypto mining facilities" as the only expressly defined form of "data center" to be regulated under its authority.

235.     Ordinance 23-20 does not apply to existing or future industrial, commercial, and other property uses in Faulkner County that create sound in decibel levels greater than the limitations imposed by Ordinance 23-20 upon only data centers, such as NewRays'.

236.     "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982.

237.     Upon information and belief, the Faulkner County Quorum Court passed Ordinance 23-20 with the purpose of specifically targeting and intentionally depriving NewRays from its right to the use and enjoyment of its property on account of the perceived race, national origin, or ethnic identity of NewRays's individual members, agents, employees, and related persons.

238.     At the legislative committee hearing considering Ordinance 23-20, defendant Murphy specifically raised the question of national origin without any prompting, admitting that regulating property rights based on nationality is expressly outside the prerogative of the Faulkner

County Quorum Court, stating that "if the Russians wanted to come and buy a farm […] there's nothing the Quorum Court can do to prevent that."

239.    Instead, defendant Murphy explained that the Faulkner County Quorum Court would need to rely on "the tools" it did claim to have to achieve its unconstitutional aims.

240.    Ordinance 23-20 was intended to achieve regulation of property rights based on perceived race or national origin through the pretextual application of sound decibel limitations intended to apply only to NewRays and no other person.

241.    Ordinance 23-20 was enacted during a groundswell of anti-Chinese sentiment in Faulkner County, Arkansas and elsewhere in Arkansas.

242.    Ordinance 23-20 does not withstand strict scrutiny, as it does not further a compelling governmental interest to be pursued by Faulkner County, Arkansas, and it is not narrowly tailored to achieve any such interest.

243.    The Faulkner County Quorum Court lacks any legitimate governmental interest, much less any compelling governmental interest, given its lack of authority to criminalize conduct in this manner attempted by Ordinance 23-20.

244.    At the time it was considering Ordinance 23-20, the Faulkner County Quorum Court rejected more narrowly tailored means to achieve any governmental interest it claimed to have by rejecting a generally applicable sound ordinance.

245.    Because Ordinance 23-20 is squarely prohibited under Arkansas state statute, it is arbitrary and capricious, and it is not rationally related to any legitimate governmental interest of Faulkner County, Arkansas.

246.    NewRays has sustained injury proximately caused by the actions of Defendants undertaken under color of law through the enactment and attempted enforcement of Ordinance 23-20.

247.    NewRays is therefore entitled to recover compensatory damages under 42 U.S.C. §§ 1982 and 1983 for Defendants' deprivation under color of law of its fundamental right to equal protection of law.

248.    NewRays is entitled to a preliminary and permanent injunction that strikes down Ordinance 23-20 and restrains Defendants from acts to enforce Ordinance 23-20 or any other facially discriminatory legislation.

## COUNT SIX
## INVERSE CONDEMNATION (ARK. CONST. ART 2., § 22)

249.    "The right of property is before and higher than any constitutional sanction; and private property shall not be taken, appropriated, or damaged for public use, without just compensation therefor." Ark. Const. Art. 2, § 22.

250.    "A taking is described as damage that will substantially oust the owner and deprive him of all beneficial enjoyment thereof; will substantially abridge the owner's rights to such an extent as to deprive him of his right; will be an interference with or disturbance of property rights resulting in injuries which are not merely consequential or incidental; a taking is determined by the character of the invasion and not by the amount of damage resulting from it, as long as the damage is substantial." *Thompson v. City of Siloam Springs*, 333 Ark. 351, 359, 969 S.W.2d 639, 642 (Ark. 1998).

251.    "Arkansas has, by statute, authorized a cause of action allowing property owners to obtain compensation for any property so taken." *Roy v. City of Little Rock*, 902 F.Supp. 871, 877 (E.D. Ark. 1995).

252.     The Arkansas Supreme Court has "interpreted this [state Takings Clause] to require compensation for a taking when a municipality acts in a manner which substantially diminishes the value of a landowner's land, and its actions are shown to be intentional." *Thompson*, 333 Ark. at 358 (quoting *National By-Products v. City of Little Rock*, 323 Ark. 619, 916 S.W.2d 745 (1996)).

253.     The specific and unequivocal purpose of Ordinance 23-20 was to take, appropriate, and damage NewRays' property rights in the use and enjoyment of its fee interest and to interfere with NewRays' distinct investment-backed expectations.

254.     Thus, the Arkansas Constitution requires that Faulkner County, Arkansas provide just compensation to NewRays for the damages arising from passage of Ordinance 23-20.

255.     Faulkner County, Arkansas has given no compensation to NewRays for its taking of NewRays' property.

256.     NewRays is entitled to the award of just compensation under the Arkansas Constitution, should enforcement of Ordinance 23-20 not be enjoined by order of this Court.

257.     The Faulkner County Quorum Court intentionally enacted an ordinance that it knew or had reason to know exceeded its lawful authority as conferred by the Arkansas General Assembly.

258.     The Faulkner County Quorum Court intentionally enacted an ordinance that it knew or had reason to know was illegal.

259.     The Faulkner County Quorum Court passed Ordinance 23-20 knowing that passage would cause specific business injury to NewRays and that its passage would result in damage to NewRays.

260.    NewRays is entitled to a preliminary and permanent injunction that strikes down Ordinance 23-20 and restrains Defendants from acts to enforce Ordinance 23-20 as a taking without just compensation in violation of the Arkansas Constitution.

## COUNT SEVEN
## DECLARATORY JUDGMENT RESTRAINING DEFENDANTS FROM ENFORCEMENT OF ORDINANCE 23-20

261.    NewRays is entitled to a declaratory judgment enjoining the enforcement of Ordinance 23-20 because it violates Ark. Code Ann. § 14-20-101(a). ("A county is authorized to prohibit and punish any act, matter, or thing which the laws of this state make a misdemeanor and to prescribe penalties for all offenses in violation of any ordinance of the county not greater nor less than the penalties prescribed for similar offenses against the laws of this state.").

262.    Faulkner County, Arkansas's enactment and threatened enforcement of Ordinance 23-20 are "attempts to deprive the owner of a preexisting use" and are therefore "unconstitutional as a taking of property without compensation or in violation of due process of law." *Blundell*, 258 Ark. at 130.[3]

263.    Ordinance 23-20 is a legislative act by the Faulkner County Quorum Court that denies NewRays the individual right of property without just compensation.

264.    Ordinance 23-20 is a legislative act contrary to the general law of Arkansas.

265.    NewRays is entitled to a judgment declaring that it is entitled to operate its preexisting business use notwithstanding any application of Ordinance 23-20.

266.    NewRays is entitled to a judgment declaring that Ordinance 23-20 is facially unenforceable as a matter of Arkansas law.

---

[3] As a matter of Arkansas law, this is a fundamental right. In *Blundell*, the Arkansas Supreme Court cited and adopted equivalent reasoning from sister states including Pennsylvania, Missouri, California, Texas, Idaho, Maryland, and New York.

267.    NewRays is entitled to a judgment that Ordinance 23-20 is unenforceable due to its facial conflict with Arkansas general law.

268.    To effectuate these declaratory judgments, and to protect itself from imminent and foreseeable injuries that will be sustained if Ordinance 23-20 is enforced, NewRays asks that the Court enter an injunction restraining Defendants and all their agents, instrumentalities, and employees, from any act to attempt to enforce Ordinance 23-20.

269.    NewRays is entitled to an injunction restraining Defendants and all their agents, instrumentalities, and employees, and all those acting in concert with Defendants, from retaliating, directly or indirectly, against NewRays and all those acting in concert with NewRays, for seeking redress of grievances.

## IV.  REQUESTS FOR RELIEF

270.    NewRays submits alongside its complaint a separate motion for preliminary injunction under Fed. R. Civ. P. 65, which is incorporated by reference herein.

271.    NewRays requests that the Court enter preliminary and permanent injunctive relief restraining all Defendants from enforcing Ordinance 23-20 as a taking in the absence of just compensation, violating NewRays' constitutional right to due process of law.

272.    NewRays requests that the Court enter preliminary and permanent injunctive relief restraining all Defendants from enforcing Ordinance 23-20 as a violation of NewRays' right to procedural due process in the *Anderson* case, including its right to federal adjudication of questions of law and fact, including its federal right to a jury trial for contested issues of fact.

273.    NewRays requests that the Court enter preliminary and permanent injunctive relief quashing all retaliatory criminal process issued by Defendants intended in whole or in part to chill NewRays from further exercise of its constitutional rights.

274.    NewRays requests that the Court enter preliminary and permanent injunctive relief restraining all Defendants from enforcing Ordinance 23-20 as a violation of NewRays' right to equal protection of the laws.

275.    NewRays requests that the Court enter preliminary and permanent injunctive relief restraining all Defendants from enforcing Ordinance 23-20 as a facial violation of Arkansas general law.

276.    NewRays requests that the Court enter an order restraining Defendants and their agents, instrumentalities, and employees, and all persons acting in concert with Defendants, from retaliating, directly or indirectly, against NewRays and all those acting in concert with NewRays, for seeking redress of grievances.

277.    NewRays requests that the Court award all compensatory and punitive damages against all Defendants to which NewRays is entitled.

278.    NewRays requests that the Court award its costs and reasonable attorneys' fees under 42 U.S.C. § 1988 upon an ultimate finding that NewRays is the prevailing party in this action.

WHEREFORE, NewRays One, LLC requests that the Court enter a declaratory judgment that (1) Faulkner County Ordinance 23-20 is an unconstitutional taking of its property without just compensation; (2) Faulkner County Ordinance 23-20 is an unconstitutional impairment on NewRays's pre-existing contractual agreements; (3) Faulkner County Ordinance 23-20 is an unconstitutional deprivation of its right to equal protection of law; (4) Faulkner County Ordinance 23-20 is a facial violation of Arkansas general law; (5) Faulkner County Ordinance 23-20 is unenforceable as applied to NewRays' lawful preexisting use; (6) that all Defendants be temporarily restrained, and preliminary and permanently enjoined, from taking any act to enforce

Faulkner County Ordinance 23-20; (7) that all criminal process issued with retaliatory purpose be quashed; (8) that Defendants be restrained from future retaliation against NewRays, and all those acting in concert with it, for exercising its right to seek redress for its grievances; (9) awarding NewRays just compensation for the taking of its private property occasioned by Faulkner County Ordinance 23-20; (10) awarding damages, fees, and costs, including reasonable attorneys' fees under 42 U.S.C. §§ 1983 and 1988; and (11) awarding all other relief to which NewRays is entitled.

Dated:  September 25, 2024                    **KUTAK ROCK LLP**

By: _____

Andrew King, Ark. Bar No. 2007176
Frederick H. Davis, Ark. Bar No. 2012271
Alexander T. Jones, Ark. Bar No. 2015246
124 West Capitol Avenue
Suite 2000
Little Rock, AR  72201-3740
Telephone: (501) 975-3000
Facsimile: (501) 975-3001
andrew.king@kutakrock.com
frederick.davis@kutakrock.com
alex.jones@kutakrock.com

*Attorneys for Plaintiff NewRays One, LLC*

FILED

JUL 1 9 2023

MARGARET DARTER
FAULKNER COUNTY CLERK

BY_____DC

**ORDINANCE 23-20**
**SPONSORED BY JUSTICE MAREE COATS**

**BE IT ENACTED BY THE QUORUM COURT OF FAULKNER COUNTY, ARKANSAS,**
**AN ORDINANCE TO BE ENTITLED:**

**AN EMERGENCY ORDINANCE ADOPTING CERTAIN RULES AND REGULATIONS**
**CONCERNING EXTERNAL NOISE ATTENUATION OF DATA CENTERS AND TO**
**PREVENT NOISE DISTURBANCE WITHIN FAULKNER COUNTY'S**
**UNINCORPORATED LIMITS; TO DECLARE AN EMERGENCY; AND FOR OTHER**
**PURPOSES**

**WHEREAS,** the equipment associated with the cooling systems and generators required to operate Data Centers generate broadband noise and low-frequency hums that result in noise disturbance. Noise disturbance is the cause of degradation and may produce negative impacts on public health, property and the environment; and

**WHEREAS,** noise attenuation should be an integral part of the design and construction of Data Centers in order to prevent noise pollution and noise disturbance; and

**WHEREAS,** the county finds that the public interest is served by the prevention of unreasonable noise emanating externally from the Data Centers and the provisions of this Ordinance are enacted for the purpose of preserving and protecting the public health, safety, welfare and property of the citizens of Faulkner County, Arkansas.

**THEREFORE, BE IT ORDAINED BY THE QUORUM COURT OF FAULKNER COUNTY, ARKANSAS, AS FOLLOWS:**

**ARTICLE 1.  Purpose and Applicability**

This ordinance shall only apply to noise disturbances originating within the unincorporated areas of Faulkner County, Arkansas.

**ARTICLE 2: Definitions**

For the purpose of this Ordinance, the following definitions shall apply unless the context clearly indicates or requires a different meaning:

1. *Ambient Noise*: The all-encompassing noise level associated with a given environment, being a composite of sounds from all sources, excusing the alleged offensive noise, at the

**EXHIBIT**

**1**

1

locations and approximate time at which comparison with the alleged offensive noise is to be made.

2. *Data Center*: Industrial or commercial building or facility that houses IT infrastructure for building, running, and delivering applications and services, and for storing and managing the data associated with those applications and services includes but is not limited to commercial crypto mining facilities.

3. *Decibel (dB)*: A unit for measuring the volume of a sound, equal to twenty (20) times to the base 10 (10) of the ratio of the pressure of the sound measured to the referenced pressure, which is twenty (20) micropascals (twenty (20) micronewtons per square meter.)

4. *Mechanical Equipment*: The networked computer systems along with supporting equipment such as batteries, backup generators, and cooling systems housed on the Data Center's property.

5. *Noise Disturbance* is any sound which:
   a.  Endangers or injures the safety or health of humans or animals; or
   b.  Annoys or disturbs a reasonable person of normal sensitivities; or
   c.  Endangers or injures person or property.

6. *Person*: An individual, association, partnership, or corporation, including any officer, employee, department, or agency.

7. *Property Line*: An imaginary line along the ground surface, and its vertical extension, which separates the property owned by one person from that owned by another person, but not including intra-building property divisions.

8. *Sound*: An oscillation in pressure, particle displacement, particle velocity or other physical parameter, in a medium with internal forces that causes compression and rarefaction of that medium. The description of sound may include any characteristic of such sound, including duration, intensity and frequency.

9. *Sound Level*: The weighted sound pressure level obtained by the use of a sound level meter and frequency weighting network, such as A, B, or C as specified in American National Standards Institute specifications for sound level meters (ANSI SI. 4-1971, or the latest approved revision thereof). If the frequency weighting employed is not indicated, the A-weighting shall apply.

10. *Sound Level Meter*: An instrument which includes a microphone, an amplifier, RMS detector, integrator or time averager, output meter, and weighting networks used to measure sound pressure levels.

## ARTICLE 3: Procedure for Measurement

All tests shall be conducted according to the following procedures:

1. *Complaint Driven:* When the measurement is the result of a complaint, measurements will be taken at the property line of the receiving property.

2. *Normal Monitoring:* When the measurement procedure is in the normal course of monitoring sound, the measurements will be taken at the property line of the source of the sound.

3. *Calibration:* The sound level meter must be calibrated at least every two years.

4. *Meter Placement:* The sound level meter must be placed a minimum of four feet above the ground or from any reflective surface. The microphone must be pointed at the sound source.

5. *Measurements:* Measurements must include "high", "average", and "low" readings. If the sound level meter does not provide these multiple readings, a minimum of three separate measurements must be taken at a single location at varying time intervals. The average sound level reading shall be used to determine whether there has been a violation of this Ordinance.

6. *Monitoring Report:* The report for each measurement session must include:
   a. The day, date and time of the measurements,
   b. Date and time of recent calibration of the sound meter,
   c. Temperature,
   d. Identification of the monitoring equipment,
   e. Location, land use, and description of the source,
   f. Location and land use of the listener, and
   g. Sound level measurements.

7. *Extraneous Sounds:* If there are extraneous sound sources that are unrelated to the measurements and increase the monitored sound level, the measurement shall be postponed until these noises subside.

**ARTICLE 4: Noise Limitations**

It shall be unlawful for any Data Center to make, or continue to cause or permit to be made or continued, noise levels constituting a noise disturbance.

For the purposes of this section, the external noise level emanating from Data Centers shall be deemed a noise disturbance per se, if the sound level is 60 dBa or higher during the hours of 8 A.M. to 8 P.M. or 55 dBa or higher during the hours of 8 P.M. to 8 A.M. measured at the property line of the receiving property.

The standard which may be considered in determining whether a violation of this Ordinance exists for a noise disturbance not meeting the threshold set forth in the immediately proceeding sentence includes, but is not limited to the following:
   a. The level or volume of the noise;
   b. The time of day or night the noise occurs;
   c. The duration of the noise;
   d. Whether the noise is recurrent, intermittent or constant; and

    e.  Whether proper and reasonable noise attenuation methods were followed and maintained

## ARTICLE 5: Violations

1.  Any or all of the following persons may be held responsible for noise violations:
    a.  The person operating the equipment or creating the noise;
    b.  The person who employs the person operating the equipment or creating the noise at the time of the violation;
    c.  The person who owns or rents the property where the violation occurs.

## ARTICLE 6: Penalties

(1)  Any person(s), firm, corporation, partnership, association, owner, occupant, agent or anyone having ownership in the subject property or supervision or control over the Data Center that violates or fails to comply with any provision of this Ordinance, shall be guilty of a misdemeanor.

(2)  Upon conviction of such violation, any offending party shall be punished by fine of up to $1,000 for any one specified offense or violation. Each day of a continuing violation constitutes a separate violation. Furthermore, if the prohibited act continues after the conviction of a violation, a court may issue a fine in an amount up to $500 for each day that the unlawful conduct continues. Additionally, the County may petition for an injunction in a court of proper jurisdiction to abate the nuisance. The county or any citizen shall be entitled to pursue all legal and equitable remedies available under the law in order to abate the nuisance and compel compliance with this Ordinance, including injunctive relief and any civil damages the court deems appropriate.

## ARTICLE 7: Severability

If any provision of this Ordinance is found to be invalid by the decision of any court of competent jurisdiction, such invalidity shall not affect the remaining sections, phrases, and provisions of this Ordinance which shall remain valid and enforceable.

## ARTICLE 8: Emergency Clause

The Quorum Court finds that the immediate implementation of this ordinance is necessary for the preservation of the public's peace, health, safety, welfare, and property, an emergency is hereby declared to exist and that this Ordinance is to be in effect immediately after its adoption.

PASSED AND APPROVED this _18th_ day of _July_, 2023.


APPROVED: _____
                COUNTY JUDGE


ATTEST: _____
               COUNTY CLERK